United States District Court
Southern District of Texas
**ENTERED**
January 06, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DONG SHENG HUANG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-269 |
| | § | |
| JALEA JOECHELLE HILL, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dong Sheng Huang, is proceeding *pro se*. Huang's claims against the various Defendants arise from events on the evening of January 5, 2014, at a Murphy USA gas station in La Marque, Texas.

Now pending before the Court are motions to dismiss filed by the Chief of Police Randall Aragon, Officer Michael Kelemen, Officer Richard Dricks, and the City of La Marque (Dkt. 66), as well Christina Balvantin (Dkt. 72).

After reviewing the pleadings, the evidence submitted, and the record of this case, the Court finds that Huang's claims against Defendants Chief Aragon, Officer Michael Kelemen, Officer Richard Dricks, the City of La Marque and Christina Balvantin should be **DISMISSED**, and that these Defendants' motions (Dkt. 66, 72) should be **GRANTED** because Huang has failed to state a claim and Defendants are entitled to qualified immunity. Further, under 28 U.S.C. § 1915(e), the Court finds *sua sponte* that dismissal of Huang's claims against these Defendants is warranted.

## FACTUAL BACKGROUND[1]

On the evening of January 5, 2014, Huang was travelling through La Marque, Texas, trying to redeem two scratch-off lottery tickets he had purchased earlier. Huang took his tickets to a nearby Murphy gas station where Defendants Hill and Williams were the working as cashiers. Communicating through a teller window, Hill redeemed one of his tickets for $41.00. Using the proceeds from that first ticket, Huang then bought a third scratch-off ticket for a price of $5. Hill gave Huang $36.00 in cash, the purchased lottery ticket, and a sales receipt for the purchase.

Huang then asked Hill to check his newly-purchased ticket. Hill told Huang the ticket was a "$5 winner." When Huang asked for a "player copy" of the redemption receipt, Hill refused to give it to him. She did, however, allow him to view the redemption receipt to confirm that he had indeed won only $5.00. Huang was duly issued his $5.00 in cash, but Huang and Hill engaged in a verbal altercation about whether he was legally entitled to keep a copy of the redemption receipt. According to Huang, Hill told him, "I've been to college, I'm smart." Huang replied, "No, you're dumb." He alleges that Hill then cursed at him. Eventually, Williams shut the window to end further conversation, and Huang knocked at the window without response.

---

[1] The following allegations are taken from Huang's current live pleading, his Second Amended Complaint. Dkt. 58. Huang's Second Amended Complaint spans 37 pages, and is accompanied by over 20 pages of exhibits, including transcripts of videos that Huang himself prepared, as well as excerpts from La Marque Police Department Manuals, and unauthenticated hand-written statements from Murphy Oil employees, with Huang's comments. The Court construes the Second Amended Complaint in the light most favorable to Huang, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

Still at the gas station, Huang used his cell phone to call Murphy's national customer service telephone number to lodge a complaint. During the call, the Murphy customer service representative asked Huang for the names of the tellers, but he did not know their names. While he was still on the call, however, he alleges that he saw Hill leave the enclosed teller area and he approached her, "to ask [ ] for her name . . . but she hurried away from Huang without a word."

After Huang approached her, Hill then called 911 to ask for police assistance at the gas station. The 911 dispatcher informed La Marque police officers that "clerks advised an [A]sian male that will not leave and caused them a problem."

Before the police arrived, Huang drove away from the gas station. But, just minutes later, Huang turned his car around and headed back, thinking he had perhaps dropped his sales receipt for the third lottery ticket. He parked near the gas pumps and looked for the receipt for approximately five minutes. Just as he drove away from the gas station for the second time, the La Marque Police arrived. Officer Kelemen of the La Marque Police Department asked Huang to step out of his car, and he began to question Huang.

After speaking to Huang, Officer Kelemen interviewed Hill and Williams. According to Huang, dashcam video from Officer Kelemen's patrol car reveals that Hill and Williams gave an embellished version of the events, including that Huang had "block[] the gas pump," insulted Hill by yelling that she was "ignorant," and claiming that Huang "hit the window." Hill also told Officer Kelemen that she had asked Huang to "get off the property" or she would call the police, but he refused. While Officer

Kelemen was investigating the dispute, Officer Dricks of the La Marque Police Department provided assistance.

Officers Kelemen then placed Huang under arrest—even though he insisted during and after his arrest that Hill's statements were not accurate. According to Huang, Officer Kelemen appeared sympathetic during the investigation and arrest, telling Huang "[S]he misunderstood you," and stating, "Oh, hey hell, I would think they lied to me about it." After his arrest, Huang's car was towed away from the gas station by Defendant 409 Towing & Recovery.

Huang was booked into the La Marque City Jail and then transferred to the Galveston County Jail. Huang alleges that Officer Kelemen's report and paperwork for the arrest included "wrong, falsified info[] to make Huang look like having committed criminal trespass." Huang was indeed charged with criminal trespass, and he was released on a pre-trial bond the next day.

After he was released, Huang retrieved his car, paid the towing and storage fees, and then drove back to the La Marque Police Department. Huang obtained a copy of his booking report and asked to speak with Chief of Police Randall Aragon. Chief Aragon and Lieutenant Jackson met with Huang, and they also provided Huang with a copy of his arrest report. Huang alleges that a Murphy USA representative called him later that day, and "apologized to Huang for what had happened and promised to investigate and notify Huang by Friday, but never contacted Huang afterwards."

A week later, Huang again spoke to Lieutenant Jackson, who told Huang that the police had obtained the video from gas station surveillance cameras, but Huang would

need to get his own copy. Huang filed an internal affairs complaint with the La Marque Police Department against Officer Kelemen.

Huang alleges that the Galveston County District Attorney then pursued a case against him on the criminal trespass charge, and the affiant on the Complaint was Defendant Christina Balvantin. Huang alleges that an Assistant District Attorney for Galveston County, Richard Hayes, offered to "dismiss the case if Huang [pled] guilty, [and paid] $100 fine, plus court costs." Huang alleges that the Galveston County District Attorney performed an incomplete investigation of the case because Haynes' file did not have the dashcam video, the surveillance video from the gas station, or a recording of the 911 call.

Huang was ultimately given a copy of the surveillance video by the Galveston County DA's Office, but he alleges that it had been edited. Huang eventually used a civil subpoena to obtain a copy of the surveillance video from Murphy USA, as well as the personnel files of Williams and Hill and the internal report of the event from Murphy's investigation. Hill also obtained his complete case file from the La Marque Police Department, as well as Officer Kelemen's "personnel file."

Huang sent a copy of the video he obtained from Murphy to the Galveston County DA. However, instead of dismissing the complaint against him after viewing the copy of the video, the Galveston County DA filed an Amended Complaint against him and continued to proceed with the charges. At trial, a jury acquitted Huang of criminal trespass. Huang successfully petitioned for expungement of the arrest. Huang also requested that the La Marque Police Department investigate Hill and Williams for "filing

false report and perjury" and that Officer Kelemen be investigated for "recklessly making arrest based on false info, and even falsif[ying] information on the police report and affidavit."

## LEGAL BACKGROUND

On September 17, 2015, Huang filed an application in this Court to file his lawsuit *in forma pauperis*. His application was granted, and this current lawsuit commenced. Huang's current live pleading is his Second Amended Complaint, which was filed on May 24, 2016. Dkt. 58.

Defendants have moved to dismiss of the each successive versions of Huang's complaint.

## LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id*. To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

In conducting this analysis, the Court does not consider legal conclusions as true, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

These standards apply to parties who are proceeding pro se. As the Fifth Circuit has noted, "[courts] hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, but pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

**B. 28 U.S.C. § 1915**

Indigent plaintiffs may seek permission from federal courts to file lawsuits and proceed *in forma pauperis* ("IFP"), without prepayment of fees or security. 28 U.S.C. § 1915(a)(1). However, the ability to proceed IFP is not without limitations. Congress recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). Accordingly, § 1915(e)(2)(B) requires a court to dismiss an IFP lawsuit if the court determines that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. The Fifth Circuit recently clarified that such dismissals should be with notice, unless the dismissal is without prejudice, or if the plaintiff has "alleged his best case." *Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016).

An action is frivolous if it lacks an arguable basis either in law or in fact. *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995); *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993). Although pro se complaints are liberally construed in favor of the plaintiff, district courts are given broad discretion in determining when such pro se IFP complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). When reviewing Huang's claims under § 1915(e)(2)(B), this Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327, 109

S.Ct. 1827, 104 L.Ed.2d 338 (1989). Furthermore, "a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton*, 504 U.S. at 32.

"A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009) (internal citation and quotation omitted). A complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id*. (internal quotation marks omitted).

## APPLICABLE LAW

### A.  42 U.S.C. § 1983

Section 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. A complaint under § 1983 must allege that the acts complained of occurred under color of state law and that the complaining parties were deprived of rights guaranteed by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). A complaint under § 1983 must also allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiffs suing public officials under § 1983 must

file short and plain complaints that must be factual and not conclusive. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

Claims under § 1983 may be brought against persons in their individual or official capacities or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)). Personal-capacity suits seek to impose liability on a government official as an individual, while official-capacity suits generally represent another way of pleading an action against an entity of which the official is an agent. *Id*. (citing *Monell v. Dept. of Soc. Serv's. of City of New York*, 436 U.S. 658, 690, n.55 (1978)). In a personal-capacity suit, the individual defendant may assert personal immunity defenses such as qualified immunity.

### B.  Fourth Amendment Claims

Huang's Fourth Amendment claims allege that his arrest was wrongful because it was not supported by probable cause. The Fourth Amendment requires that a warrantless arrest by an officer be supported by probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-656 (5th Cir. 2004) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). Because probable cause is a wholly objective standard, viewed from the perspective of a reasonable officer, an arresting

officer's subjective motivation in making the arrest is irrelevant. *Whren v. United States*, 517 U.S. 806, 813 (1996).

### C.   Individual and Supervisory Liability under § 1983

Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983. *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012) ("[a] Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"); *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 169 (5th Cir. 2010) ("To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor."), *cert. denied*, 564 U.S. 1038 (2011).

However, a supervisor not personally involved in the acts that allegedly deprived the plaintiff of his constitutional rights can still be liable under § 1983, if (1) the supervisor failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *see also Morgan v. Texas Dep't of Criminal Justice McConnell Unit*, 537 Fed. App'x. 502, 509 (5th Cir. 2013) ("A defendant . . . may be held liable for his or her role in a constitutional violation premised on [his] conduct as a supervisor, for example, his or her failure to train."); *Martone v. Livingston*, No. 4:13–CV–3369, 2014 WL 3534696, at *7 (S.D. Tex. July 16, 2014)

(Plaintiff could hold TDCJ prison officials liable in supervisory capacity for "creating and approving the dangerous conditions that caused [Plaintiff's] heat stroke, and failing to remedy them.").[2] Further, "[s]upervisory liability may additionally exist 'without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002). Under this analysis, customs or widespread practices are akin to official policies. *Cozzo*, 279 F.3d at 289.

### D.  Qualified Immunity Under Federal Law

Under federal law, public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986); *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009). As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011). In conducting a qualified immunity analysis, each defendant's conduct must be examined individually. *See Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007).

---

[2] In this context, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" *McCully*, 406 F.3d at 381.

Although qualified immunity is an affirmative defense, a plaintiff "has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery,* 569 F.3d 214, 217 (5th Cir. 2009). A plaintiff can meet this burden by alleging facts showing that the defendant committed a constitutional violation and that the defendant's actions were objectively unreasonable in light of the clearly established law at the time those actions were taken. *Atteberry v. Nocono General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). To be "clearly established," the law must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, ––– U.S. –––, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015). The Fifth Circuit has taken pains to point out that the "objectively unreasonable" analysis here is not the same as the "deliberate indifference" analysis seen in the Eighth Amendment context above—"[o]therwise, a successful claim of qualified immunity in this context would require defendants to demonstrate that they prevail on the merits, thus rendering qualified immunity an empty doctrine." *Hinojosa v. Livingston*, 807 F.3d 657, 672 (5th Cir. 2015).

As the Fifth Circuit has explained, "[a] plaintiff seeking to overcome" a defense of immunity to suit "must plead specific facts that . . . allow the court to draw the reasonable inference that . . . defeat[s]" the defense. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (regarding qualified immunity). Only "[a]fter the district court finds a plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,'" may it issue a "narrowly tailored" discovery order. *Id.; see Wicks v. Miss. State Emp't Svcs.*, 41 F.3d 991, 994 (5th Cir. 1995) ("Discovery . . . must

not proceed until the district court first finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.").

## ANALYSIS

### A. Qualified Immunity: Officer Kelemen

Huang has sued Officer Kelemen under 28 § U.S.C. 1983, asserting that Officer Kelemen arrested him without probable cause, violating his Fourth Amendment rights and causing him damages. Huang specifically complains that Officer Kelemen conducted a deficient pre-arrest investigation because he failed to listen to Huang's side of the story, because Hill and Williams were unreliable witnesses of whom Kelemen should have been "suspicious," and because Officer Kelemen should not have interviewed Hill and Williams outside of Huang's earshot. Huang alleges that neither Hill nor Williams told Officer Kelemen that they had asked Huang to leave "several times" and that Officer Kelemen simply fabricated this information. Next, Huang alleges that Officer Kelemen violated his Fourteenth Amendment rights as a pre-trial detainee by including incorrect information in the arrest report, deliberately falsifying his report to "incriminate Huang for criminal trespass."

### 1. Alleged Lack of Probable Cause Supporting Arrest

"The right to be free from arrest without probable cause is a clearly established constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). However, under Fifth Circuit law, when a plaintiff alleges that he was arrested without probable cause, an officer's qualified immunity will defeat the claim so long as "a reasonable officer could have believed the arrest at issue to be lawful, in light of clearly established

law and the information the arresting officers possessed." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (alterations omitted). Even law enforcement officers who "'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Id.* (internal citation omitted) (quoting *Anderson*, 483 U.S. at 641).

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty v. Tex. S. Univ.,* 391 F.3d 653, 655-56 (5th Cir. 2004) (quotation marks and citation omitted). Significantly, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Curtis v. Anthony*, 710 F.3d 587, 595 (5th Cir. 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 245 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

When the defense of qualified immunity is asserted in a false arrest case, "the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *Good v. Curtis*, 601 F.3d 393, 401 (5th Cir. 2010) (citations omitted). "[L]aw enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to [qualified] immunity." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) (quotation marks and citation omitted).

In Texas, a person commits the offense of criminal trespass if he "enters or remains on or in property of another ... without effective consent and the person … received notice to depart but failed to do so." *Wilson v. State*, 09-15-00412-CR, 2016 WL

6110712, at *5 (Tex. App.—Beaumont Oct. 19, 2016, no. pet. h.) (noting, "the statute requires the State to prove that the defendant was warned by someone with the authority to do so that he could no longer enter the owner's property, a standard that is easily understood by ordinary persons.").

Here, although Huang complains that the gas station employees were not reliable witnesses and that Officer Kelemen's investigation was not complete, Huang's own pleadings assert that Officer Kelemen had received a 911 call informing him that the gas station employees had complained that "an [A]sian male that will not leave and caused them a problem." Further, even Huang admits that, when the police arrived minutes later, he was still present at the gas station. Huang alleges that Officer Kelemen was informed that Huang blocked the gas pump, insulted Hill, hit the teller window, and had refused to leave the property even after Hill threatened to call the police.

Huang alleges that Officer Kelemen should have done more, and that he should have given more weight to Huang's version of effects. However, "the mere fact that there may be some exculpatory evidence does not negate probable cause if the totality of the circumstances support a reasonable conclusion that criminal activity is afoot." *Rakun v. Kendall County, Tex*, CIV.A. SA-06-CV-1044, 2007 WL 2815571, at *12 (W.D. Tex. Sept. 24, 2007) (citing *Gordy v. Burns*, 294 F.3d 722, 729 (5th Cir. 2002) (recognizing that there was evidence suggesting that the arrestee was not guilty of the crime, but noting that the probable cause inquiry does not require a showing that the officer's belief was correct or that it was more likely true than false; rather, "the probable cause analysis only requires that we find a basis for an officer to believe to a 'fair probability' that a violation

occurred"), abrogated on other grounds by *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (holding that malicious prosecution is not an actionable section 1983 violation)). Thus, Huang's own allegations show that Officer Kelemen could have reasonably believed that probable cause existed to support Huang's arrest for criminal trespass. *See, e.g.*, *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

Accordingly, the Court finds that Kelemen's motion to dismiss on the grounds of qualified immunity should be **GRANTED** because qualified immunity bars Huang's claims against Kelemen relating to Huang's arrest. Further, the Court finds that

### 2.   Alleged False Statements in Police Report and Affidavit

Huang alleges that Officer Kelemen violated his Fourteenth Amendment rights as a pre-trial detainee by deliberately falsifying reports to incriminate Huang for criminal trespass. Specifically, Huang pleads, "The police report and Affidavit for Warrant of Arrest and Complaint has the same content, just for different purpose. On the affidavit, Kelemen wrote wrong, even falsified info to make Huang look like having committed criminal trespass, see Exhibit 10-14." Huang's pleadings take great pains to point out each and every one of Officer Kelemen's statements in the arrest warrant and report that Huang claims was not true.

Huang does not cite to any authority that such an action would violate the Fourteenth Amendment. In 2015, it was clearly established law that "[a] governmental official violates the Fourth Amendment when he [or she] deliberately or recklessly provides false, material information for use in an affidavit in support of a search [or arrest] warrant." *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997). In the context of §

1983 claims asserting Fourth Amendment violations, a governmental official is "liable for swearing to false information in an affidavit in support of [an arrest] warrant, provided that: (1) the affiant knew the information was false or [acted with] reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information." *Hart*, 127 F.3d at 442 (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "To prove reckless disregard for the truth [a plaintiff] must present evidence that [the defendant] 'in fact entertained serious doubts as to the truth' of the relevant statement." *Hart*, 127 F.3d at 449 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)); *Melton v. Phillips*, —— F.3d ——, 2016 WL 4895989, at *2 (5th Cir. 2016).

Reviewing the allegations in Huang's pleadings, and in light of the Court's findings above, the Court now also finds that Kelemen's motion to dismiss on the grounds of qualified immunity should be **GRANTED** because qualified immunity bars Huang's claims against Kelemen arising from Kelemen's affidavit and report.

Further, after a review of the pleadings and the record of this case, the Court also finds that Huang has pled his "best case," and that all of Huang's claims against Kelemen should be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(b)(ii).

### B.  Qualified Immunity: Officer Dricks

Huang alleges that Officer Dricks violated his Fourth Amendment rights, under the doctrine of bystander liability, because Officer Dricks could have "prevented or stopped the arrest by persuading Kelemen that cashiers lied; that Huang didn't commit criminal trespass; that further investigation is needed before making arrest." Instead, Huang

alleges that Officer Dricks "just blindly watched, and even assisted Kelemen to search and arrest Huang, and transported Huang to jail [and] acquiesced in Kelemen's arrest."

"Bystander liability" attaches when "the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)); *see also Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). "The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." *Id.* at 647 (quoting *Randall*, 302 F.3d at 204 n. 24). This doctrine arises most often in the context of excessive force claims. Even assuming *arguendo* that it would be applicable to a claim of wrongful arrest unsupported by probable cause, Huang's own allegations—as discussed above—show that the claims should be dismissed and that Officer Dricks is entitled to qualified immunity here.

Accordingly, the Court **GRANTS** Officer Dricks' motion to dismiss Huang's claims against him on the grounds of qualified immunity. Further, after a review of the pleadings and the record of this case, the Court also finds that Huang has pled his "best case," and that all of Huang's claims against Dricks should be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(b)(ii).

### C.  Allegations against 409 Towing & Recovery

Huang's claims against 409 Towing & Recovery are based upon his allegation that, because there was no probable cause for his arrest, there was "no probable cause for

towing of Huang's vehicle by 409 towing [and] the seizure of vehicle by 409 towing, acting under color of state law under direction of LMPD, violated Huang's clearly established fourth amendment right, proximately caus[ing] damage[s] to Huang."

However, as set out above, Huang's own pleadings allege facts showing that Officer Kelemen's arrest of Huang was based upon information received from the 911 dispatch, as well as witness testimony at the scene. Further, after a review of the pleadings and the record of this case, the Court also finds that Huang has pled his "best case," and that all of Huang's claims against 409 Towing & Recovery should be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(b)(ii).

### D. Allegations against Christina Balvantin

Next, the Court turns to the allegations against Christina Balvantin. Balvantin is a Legal Secretary for the Galveston County District Attorney's Office, and she was the affiant on the Complaint and Information filed by the District Attorney's Office to charge Huang with criminal trespass. Huang alleges that she violated his constitutional rights under the Fourteenth Amendment by "intentionally omitting exculpatory info[rmation] on 02/04/2014 [Complaint & Information] and failing to do further inquiry." Specifically, he alleges that she should have also included a statement that Officer Kelemen made in an affidavit that, "Huang said Hill was lying about the incident and he did not do anything wrong." Huang alleges that this statement should have alerted a person with reasonable caution that Huang was innocent, and that Balvantin should have at least then requested more information, "such as Murphy USA store surveillance video, Kelemen's dashcam video, [and the] 911 call recording."

Huang contends that the Galveston County DA's Office subsequently obtained more complete information, including the store video, the La Marque Police Department report, and Kelemen's dashcam video. However, he alleges that Balvantin nonetheless signed a second Complaint & Information and "swore to C&I for evil purpose of maliciously incriminating Huang for criminal trespass" in August 2014, even though he alleges that "a reasonable person would have easily concluded Hill, Williams, [and] Kelemen lied about it, [and] Huang didn't commit criminal trespass."

Balvantin has moved to dismiss Huang's claims against her for failure to state a claim and qualified immunity. After reviewing the applicable authorities, the Court finds that Balvantin's motion to dismiss should be **GRANTED**, and that Huang has failed to state a claim against her. Specifically, the Court finds that Huang's allegations are insufficient to state a claim under *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc), cert denied, 543 U.S. 808 (2004) (noting that there is no "freestanding constitutional right to be free from malicious prosecution."). *See also Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (no substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause).

Further, after a review of the pleadings and the record of this case, the Court also finds that Huang has pled his "best case," and that all of Huang's claims against Balvantin should be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(b)(ii).

### E.  Allegations against City of La Marque and Chief Aragon

Huang alleges that the City of La Marque delegated policymaking authority to Chief Aragon, and that Chief Aragon was deliberately indifferent in hiring Officer Kelemen. Huang alleges that the City received "a lot of citizen complaints" against Officer Kelemen in 2003, and he alleges that Officer Kelemen's patrol supervisor in 2005 "expressed concern over the validity of some of citations Kelemen issued." Accordingly, Huang contends that "La Marque should have known Kelemen is highly likely to cause injury to citizen and should not have hired Kelemen."

Huang also alleges that the City failed to train Officer Kelemen and Officer Dricks, stating, "police officer shall be trained to adhere to the truth, not to fabricate info, at every phase of criminal investigation. Chief Aragon, the final policymaker at LMPD, deliberately adopted no such training policy."

Huang alleges that the City of La Marque has a "policy/custom of disregarding truth, condoning officer's wrongdoing at LMPD," pointing to the three separate complaints that Huang himself has filed about Officer Kelemen. Huang alleges that "Aragon didn't take any action to seek out the truth or punish Kelemen, but simply referred Huang to judicial system, completely ignoring [his] own duty." According to Huang, Aragon "could have seen easily that Kelemen lied on warrant affidavit and police report by examining Kelemen's dashcam video, police report, Warrant Affidavit, 911 calls," but failed to do so, and he instead "deliberately disregarded the truth, condoned and ratified Kelemen's wrongdoing." Huang alleges that this policy or custom encouraged Officer Kelemen to violate Huang's civil rights.

Huang further alleges that "Aragon adopted no written training policy to train its officer adequately to protect citizen's constitutional rights. Its officers were not trained or adequately trained to determine probable cause for arrest, to adhere to the truth during investigation, to intervene in presence of fellow officer's constitutional violations." Huang alleges that "Aragon adopted no written criminal trespass policy to guide its officers on how to determine if criminal trespass happened, when to issue criminal trespass warning, when to make arrest. As police chief, Aragon knows the risks of constitutional violations very well if its subordinates were not trained or supervised in areas of arrest but he deliberately disregarded that risk by failing to adopt training policy, adopt criminal trespass policy, train and supervise them properly, especially Kelemen and Dricks."

All of Huang's allegations against Chief Aragon and the City relate to the alleged lack of probable cause supporting Huang's arrest. As noted above, Huang's own pleadings contain facts that show that Officer Kelemen's arrest of Huang was supported by probable cause, that no constitutional violation has been pled, and that Huang's pleadings are insufficient to establish municipal or supervisory liability. Accordingly, the Court finds that the City and Chief Aragon's motion to dismiss should be **GRANTED**.

Further, after a review of the pleadings and the record of this case, the Court also finds that Huang has pled his "best case," and that all of Huang's claims against Chief Aragon and the City should be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(b)(ii).

## CONCLUSION

As stated more fully above, the Court finds that Huang's claims should be **DISMISSED** against Defendants Chief Aragon, Officer Michael Kelemen, Officer Richard Dricks, the City of La Marque and Christina Balvantin, and that these Defendants' motions  (Dkt. 66, 72) should be **GRANTED** because Huang has failed to state a claim and Defendants are entitled to qualified immunity.

Further, after a review of the pleadings and the record of this case, the Court also finds that Huang has pled his "best case," and that all of Huang's claims against 409 Towing & Recovery should be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(b)(ii).

Such dismissals are **WITH PREJUDICE.**

The Court also **DENIES** Huang's motions to strike Dkt. 69 and 71, and, for the reasons stated above, **DENIES** Huang's motion for judgment against 409 Towing & Recovery 74. Additionally, the Court **DENIES** Defendant's supplemental motion, Dkt. 63, as moot.

SIGNED at Galveston, Texas, this 6th day of January, 2017.

George C. Hanks Jr.
United States District Judge